DoAll Tulsa Company, Dissolved, R. J. Wilkie, Trustee v. Commissioner.
DoAll v. Commissioner
Docket No. 16237.
United States Tax Court
1949 Tax Ct. Memo LEXIS 220; 8 T.C.M. (CCH) 343; T.C.M. (RIA) 49075; April 6, 1949
*220 Walter L. Tucker, Esq., and Carl A. Phillipps, Esq., for the petitioner. David F. Long, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in excess profits tax in the amount of $7,074.10 (with a resultant overassessment in income taxes in the amount of $2.25) for a petitioner's opening fiscal year, August 7, 1942, to June 30, 1943. With the exception of $3.59 disallowed as a deduction, not here in issue, this deficiency is based upon the inclusion of $7,847.53 in gross income received by petitioner within the taxable period in question. The sole issue is whether the Commissioner erred in determining "That such fees were received without restriction as to use or became unqualifiedly due and payable within the above period * * *." The facts were presented by oral and documentary evidence as well as by stipulations which we adopt and incorporate in our findings of fact by this reference. Findings of Fact Petitioner is a trustee of the assets of the DoAll Tulsa Company, hereinafter referred to as the "Service Company," which was incorporated August 7, 1942, and duly dissolved May 27, 1947, under *221 the laws of the State of Oklahoma. The Service Company employed the accrual, fiscal year method of accounting. The returns for the period here involved were filed with the collector for the district of Oklahoma. The Service Company was organized for the purpose of carrying on the business of buying, selling, leasing and otherwise disposing of and distributing machines, machine tools, accessories, and other machine products. On August 10, 1942, the Service Company entered into a sales and service agreement with Continental Machines, Incorporated, of Minneapolis, Minnesota, hereinafter referred to as the manufacturer. This agreement appointed the Service Company as the authorized representative for the sale and servicing of the products of the manufacturer within a specified territory, including the State of Arkansas and parts of Oklahoma, Kansas and Missouri. This territory could be changed by the manufacturer upon ten days' notice. The products involved were DoAll Contour Machines and Band Filers, including accessories, attachments, and replacements thereto. These machines were new and improved band saws of many diversified uses. The Service Co. undertook to sell these machines; *222 to sell the supplies and accessories used in connection therewith; to supervise the installation of the machines sold; to give instructions to the buyers as to the proper use of the machines; and to service and maintain the machines for two years after sale. The sales were made in the name of the manufacturer. The manufacturer felt that good servicing would be a major factor in determining the success of the product. Accordingly, it was provided that the purchaser of each machine should be entitled to instructions in the use of the machinery and to two years of servicing. For the sale of each machine within the territory assigned, the Service Co. was to receive 10 per cent of the purchas- p-ice, and was to receive 25 per cent on the sales of all accessories and supplies. In addition, the agreement provided: "An amount equal to fifteen per cent (15%) of the list price of the products sold (except accessories and supplies) shall be paid to the Service Company as a service fee for supervising the operation and necessary instruction at the customer's place of business, and in addition, shall be deemed as a compensation for the continuous servicing and maintenance of the products sold, *223 for a period of two (2) years following installation." In the event of the reduction of a territory, the Service Co. losing the territory was to pay to the Service Co. getting the territory the unearned service fees on the machines in the territory covered by the change. The contract also provided that all sales were to be made in the name of the manufacturer and that all payments were to be made directly to the manufacturer. No credit sales could be made without express approval of the manufacturer. The manufacturer also reserved the right to charge back against the Service Company any commissions paid in the event of the purchaser's failure to pay the purchase price, cancellation of the sales, or disallowance by the Government of any commissions. The Service Company was to furnish the manufacturer with service reports in connection with the two-year servicing and maintenance provisions. The manufacturer had the right to examine the records and operations of the Service Company in order to verify that the machines were properly serviced. In the operation of the business pursuant to the terms of the agreement, the Service Company employed "sales engineers" who received a basic *224 salary of $200 a month, and in addition thereto, received commissions on the sales effected. Their duty, in addition to the making of sales, was to supervise the installation of the machinery and give the necessary instructions on the operation of the machinery. Thereafter, they were responsible for the continued maintenance and servicing of the machines for the two-year period. The Service Company received $14,753.41 during the taxable period in question pursuant to the servicing provisions of the contract which provided for the servicing of the machines, within the territory, for a period of two years. These amounts were received in a lump sum, along with the sales commissions, and placed in the taxpayer's general banking account. When the payments were received by the Service Company, one-third of the amount received was accrued in the first month, upon delivery of the machines to the purchaser, when the Service Company generally performed the installations and gave the necessary instructions on operation. The remaining two-thirds were accrued over the remaining 23 months of the servicing agreement during which the Service Company was to provide continuous servicing and maintenance *225 of the machines installed. Under this method of accounting, the Service Company reported $6,905.88 of the service fee "earned" as taxable income for the fiscal year ended June 30, 1942. The remaining $7,847.53 was treated as nontaxable income, was denoted "Deferred Service Fees," and was shown as a liability in the balance sheet attached to the income tax return of the Service Company. As of February 1, 1945, there was a reallocation of territory, as provided for in the contract, under which the Service Company lost certain of its territory to the DoAll Kansas City Company. Pursuant to the terms of its contract with the manufacturer the Service Company paid the Kansas City Company $2,709.01 by check dated January 27, 1945. This amount represented "unearned service fees" as listed by the Service Company. Of this total payment, $365.52 represented service fees recorded on the books of the Service Company, as received in advance in connection with machines sold by it during the taxable period here in question. Opinion KERN, Judge: The issue presented in this proceeding must be decided in favor of respondent on the authority of . *226 See, also, ; ; ; , aff'd . Petitioner argues that the service fees were not received with a present right or claim of ownership since the service reports required of it, and the examination of its records and operations permitted to the manufacturer constituted restrictions upon the disposition and use of the sums paid. Petitioner also argues that the payments of service fees were not received by it as compensation but as "security" for compensation in regard to further services, released as such "security" only when the contemplated services were actually rendered. Upon the entire record before us, we conclude that these arguments are without merit. The possibility that petitioner, under its contract with the manufacturer, might be called upon to refund a part of these payments in some future years, can not affect the result which we have reached. See . Decision will be entered for the respondent.